LOU. & FRANK. R. R. Co. *vs.* BROWN, &c.

---

# Louisville and Frankfort Railroad Company *vs.* Brown, &c.

Case 35.

$\frac{17m763}{100\ \ 638}$

$\frac{17m763}{m102\ 404}$

## APPEAL FROM FRANKLIN CIRCUIT.

ORD. PET. $\frac{17bm763}{104\ \ 189}$

1. Purchasers of lots in cities and towns take them subject to the discreet exercise by the town authorities of all the power which the law gives them over the streets and alleys.
2. The municipal authorities of the city of Frankfort had full power to admit the Louisville and Lexington Railroad to pass through Broadway street, and to permit such grading as was proper to secure the passage of the cars through that street, and no right of action for any partial injury to the owners of property on said trial accrued therefrom.

LOU. & FRANK.
R. R. Co.
*vs.*
BROWN, &c.

[The facts of the case are stated in the opinion of the court.—REP.]

*J. Harlan* for appellants—

1. I lay it down as a clear principle of law that a party is not liable to an action of trespass *quere clausum frigit*, if he does not enter on the land of the plaintiff and do some injury to it.

2. That a public improvement made by authority of law, and in strict conformity to the provisions thereof, is in no respect a nuisance, and that a private individual cannot maintain an action and recover damages, as for a nuisance, to his property, unless he shows the authority has been transcended.

In support of these positions I rely upon the following authorities:

1. *Keasy vs. City of Louisville,* 4 *Dana,* 154. In that case the city authorities caused a street to be graded to a certain height, and the lot of Keasy was brought to a corresponding height, and his house built to correspond with the grade. Subsequently the street, by city authority, was further, elevated, forming a *bank* in front of the house of plaintiff, which compelled him to rebuild. It was held that neither his property, nor any privilege or appurtenance thereof, was touched, he had no right to compensation from the city. Though there may be extreme cases where the deprivation of the use of property not touched may entitle the owner to compensation *from the public, as a general rule the law gives no damages where there has been neither trespass nor nuisance.*

2. *Chapman vs. Albany and Schenectady Railroad Co.,* 10 *Barbour Supreme Court Reports,* 360. The principles settled in this case are—

1. "A railroad corporation, constructing its road through one of the streets of a city, in pursuance of authority granted by the legislature, and with the consent of the common council of the city, is not liable for consequential damages sustained by persons owning land adjacent to the street, provided the au-

thority given to the company is exercised with proper care and skill."

2. "The use to which a street in a city or village is devoted is far more extensive than the mere right of the public to pass over it. It may be used in any way which shall best promote the interest and business of the city or village where it is located; what will so promote those interests and that business is to be determined by the municipal authority to whom the control of the streets is committed."

3. "Those who purchase lands adjacent to such streets must be deemed to take their title subject to the appropriation of the streets to such purposes and objects as the public interest shall require."

4. "The only restriction upon this appropriation is, that the use to be made of the streets must not be incompatible with the ends for which they were established."

The same principles may be found in *Gould vs. Hudson River Railroad Company*, 2 *Selden Rep. Court of Appeals*, 522; *Williams vs. The New York Central Railroad Company*, 18 *Barbour*, 222. In this case the court say that the use of a street, by a railroad, is one of the modes for enjoying the easement, and the legislature has the power of declaring the uses for which public highways may be used. "If (say the court,) we are right thus far, it is established that the railroad of the defendants was located, constructed, and has been operated under authority of law; and unless there has been an excess of power, or a negligent use of it, the plaintiff has sustained no injury except such as is consequent upon, and incidental to, the exercise of the defendant's legal right." "That which is authorized by an act of the legislature cannot be a nuisance." (See also 6 *Barbour*, 313; 13 *Barbour*, 646; 21 *Barbour*, 617; 2 *Livingston's Law Magazine*, 580–587.)

In the case of *Rogers vs. Kennebec and Portland Railroad Company*, 35 *Maine Reports*, 323, the court say: "For any lawful act done by the defendants, in

Lou. & Frank. R. R. Co. *vs.* Brown, &c.

the construction of their road, the plaintiff will not be entitled to recover damages, although he may be indirectly injured. 7 *Greenleaf,* 273; 1 *Pickering,* 418; 4 *Comstock,* 200."

(*Whittier vs. Portland and Kennebec Railroad Company,* 38 *Maine Reports,* 26; *Applegate vs. Lexington and Ohio Railroad Company,* 8 *Dana,* 289.) These cases support the positions for which I contend, namely: 1. That the railroad company was authorized, by law, to construct their road in and along Broadway street, in Frankfort. 2. That for the exercise of a lawful right, done in a lawful way, the railroad company is not liable to damages at the suit of the plaintiffs in this action. 3. That the railroad company is not a trespasser on the rights of plaintiffs because it never entered on their land. 4. That the railroad cannot be proceeded against as a private nuisance, because that which the law authorized to be done cannot be considered a nuisance. 5. From these facts, as agreed by the parties, the judgment of the circuit court should have been against, instead of in favor of the plaintiffs.

If this action is maintainable, every owner of every lot on Broadway street, in Frankfort, and Jefferson street, in Louisville, can maintain an action against the railroad company upon the principle that the laying of the track in the street and the noise of cars in passing and repassing renders the occupation of his lot and house disagreeable and uncomfortable and consequently of less value; and witnesses can always be found to give evidence to that effect.

A decision in favor of the maintenance of this action will virtually destroy the road, or require all of its profits to pay the damages and costs of the actions that may, from time to time, be brought against it.

If the court will take the trouble to make a personal inspection of the premises they will find that the plaintiffs have not in fact any real cause of action. The street on either side of the rail-

road is well graded and of sufficient width for all practical and useful purposes; and as respects the safety of little children and domestic animals it is better than if the rails of the road were on a level with the foot pavements.

Besides, these plaintiffs cannot complain because Mrs. Price, from whom they derived title, had notice, before she purchased the lot, that the right of way along Broadway street had been granted to the railroad company. She must, therefore, be regarded as having made the purchase in view of the construction of the road on that street.

It is admitted in the agreed facts that the grade of the road is not greater than was necessary to cross the Kentucky river, and there is not the slightest evidence that the company have, in any respect, exceeded the authority vested in them by the act of incorporation, and the license given them by the municipal authority of Frankfort.

If the principles now contended for by the plaintiffs in the court below are to be established by the decision of this court it will be a deathblow to the construction of railways through and along the streets of towns, villages and cities of this state. The march of internal improvements, so far as railways are concerned, will receive a blow from which it can never recover. If railroads are not permitted to enter towns and villages they will be of little value and very few of them will be constructed. The decision of this case is not only important to the Louisville and Frankfort company, but to all other roads in the state already finished, and, also, to those in the process of construction.

As no part of the plaintiffs' land has been taken by the railroad, the constitutional question raised by the counsel for the appellees does not arise. The track of the road was laid on a public street by the consent of the authorities of Frankfort in whom the legal title was vested in virtue of an act of the legislature.

In 10 *Barbour, supra,* the supreme court of New York make the same quotation from *Lexington and Ohio Railroad Company vs. Applegate;* and that court also say : "The use to which a street in a city or village is devoted is far more extensive than the mere right of the public to pass over it. It may be used in any way which shall best promote the interests and business of the city or village where it is located. What will so promote those interests and that business is to be determined by the municipal authorities to whom the control of the streets is committed. If it ever was the rule that streets could only be appropriated to the use of those who may have occasion to travel on them, either on foot or by means of animal power, it is very certain that the progress of improvements, and the exigencies of society, have left such a rule far behind." (*Page* 263.) The same principles are recognized in *Williams vs. The New York Central Railroad Company,* 18 *Barbour,* 222.

The case of *Parker vs. Boston & Miami Railroad Company,* 3 *Cushing,* 107, was relied upon by the counsel in his oral argument to sustain his action. That is no authority in their favor but against them. The recovery there was in virtue of a statute of Massachusetts. It was an action by Parker to recover damages against the railroad for raising the grade and making an embankment directly in front of his land "by means whereof the petitioner's access to his land from the Winter Hill road was greatly *impaired, injured, and cut off.*" He claimed damages under a statute called the general railroad law. After stating the proceedings in the sheriff's court and the sheriff's instructions upon the law of the case, Chief Justice Shaw says: "That question is, whether a party having land with buildings thereon, lying near the track of a railroad, but not crossed by it, can recover compensation for incidental damage caused, to his land, by the construction of the rail-

road and the structures incident to and connected with it.

"The *language* of the general railroad act, (*Revised Statutes, chaps.* 39 *and* 56,) is *very broad*, declaring that 'every railroad corporation shall be liable to pay *all damages that shall be occasioned by laying out and making and maintaining their road*, OR, by taking any land or materials, as provided in the preceding section.'"

Here is an express provision making all railroad companies liable for *all damages* that may be occasioned, &c.

Chief Justice Shaw says: "The terms of the section must include damages which are caused by something else besides taking land and materials, because damages of that kind are distinguished from the former by the word 'or.' So the word 'occasioned' points to any damage which may be *directly* or *indirectly* caused by the railroad.

The action was sustained under the statute, and not upon common law principles. There is no such statute in Kentucky, and the right of action, if it exist, is in virtue of the principles of the common law.

I apprehend no case can be found, in any American or British report, where the action has been maintained upon common law principles.

*L. Hord* for appellees—

1. Have the appellees a right of property which has been violated by the railroad company? They are the owners of a lot of ground in the city of Frankfort, on Broadway, with a dwelling house thereon, and claim to have the right to the free and unobstructed use of that street in common with all others in like circumstances, for all legal purposes. This right has been, with all its limitations, judicially expounded, not only in this but in other courts; and especially is the court referred to the case of *Lexington and Ohio Railroad Company vs. Applegate*, 8 *Dana*, 289. In that opinion, at *page* 294, the court said: "The streets of towns and cities are designa-

ted not only for public purposes, and the public generally, but also for the special convenience and enjoyment of such persons as should purchase and hold lots contiguous to them. The title to such lots carries with it, as essential incidents, certain services and easements, not only valuable and almost indispensable, but as inviolable as the property in the lots themselves, and therefore the owners and occupants of lots on such streets have a peculiar interest in the streets, which neither the local nor general public can pretend to claim; a private right of the nature of an incorporeal hereditament, legally attached to the contiguous ground; an incidental title to certain facilities and franchises assured to them by contract and by law, without which the property would be of comparatively little value, and would never have been purchased."

The court, after thus stating with distinctness the principle, elucidates and explains the difference between ordinary roads and the streets of towns and cities—how the former may be changed or abolished without the consent of the owners of the contiguous soil: "While the latter may not constitutionally be closed or discontinued or applied to public or private use, incompatible with the original design, without first obtaining the consent of the owners of lots thereon, or without making them just compensation for any damage which may result to their property, corporeal or incorporeal, from such *occlusion, discontinuance*, or new application of the street." "The commonwealth, with all her sovereign right of eminent domain, cannot take away private property for the most imperious or important public use, without either the owner's consent or the payment to him of a just equivalent in money."

There is a manifest distinction between the case referred to and the present case. In this case there is an obstruction of the street by raising a wall which cannot be passed over for a considerable distance on each side of the plaintiffs' property; in the

case referred to there was no such obstruction—there was no purpresture. In the case under consideration there is an exclusive appropriation of about thirteen feet of the centre of a street, by a wall twelve feet high at one end of plaintiffs' lot, and four feet at the other end, rendering it impossible to pass for the whole length of the lot, a distance of eighty feet. Here is presented a case such as this court said should meet with relief, when it used the following language in the opinion referred to, (*page* 310) : "If it shall ever hereafter appear, upon other proof, that such use as that complained of encroaches on any private right, or obstructs the reasonable use and enjoyment of the street by any person who has an equal right to the use of it, *we shall be ready to injoin all such wrongful appropriation of the highway.*" Why then shall not the relief be given ?

But it is said that if this action is sustainable it puts an end to railroads. We reply, if it is not sustained it puts an end to private rights in streets and alleys in towns and cities, which had an existence long before railroads. Is there any injustice in requiring railroad companies to pay damages to private rights in property ? Such compensation is made in all cases where private property is taken for public roads. Why shall railroad companies claim exemption from the same responsibilities to which others are subjected ?

2. We contend that the circuit court erred in limiting the plaintiffs' recovery of damages up to the commencement of the suit. We insist on the right to damages for the entire injury to the enjoyment of the property, upon the presumption that the purpresture will be continued.

The court is referred to the following additional authorities not before cited : *Parker vs. Boston and Maine Railroad, Metcalf's Reports,* 107 ; *Drake, &c. vs. Hudson River Railroad,* 7 *Barbour,* 508.

Lou. & Frank.
R. R. Co.
vs.
Brown, &c.

January 20.

Judge Duvall delivered the opinion of the court:

The Lexington and Ohio Railroad company was incorporated by an act of the legislature, approved January 27, 1830; by the provisions of the 14th section of which they were authorized to construct a railroad from Lexington to some point on the Ohio river.

In May, 1832, the board of trustees of the town of Frankfort, at the instance of the railroad company, passed an ordinance granting to the latter, the right "to locate their road through any of the streets and alleys of the town, to the full extent that may be necessary to construct said road, and the same, when located by said company for the purposes aforesaid, shall forever be and remain in perpetuity to the said president and managers, and their successors in office, without any tax, charge, duty, let or hindrance upon the part of the trustees or their successors in office."

It may be proper to remark here, that by the several acts concerning the town of Frankfort the legal title of all the streets and alleys, was vested originally in the trustees of the town, and since it has been declared a city, the title is in the board of councilmen.

Under the authority conferred by the ordinance referred to, the railroad company selected Broadway as the street through which they would construct the road. But the company subsequently failed, and such portions of the road as had been completed, were sold, the state becoming the purchaser at the price of $150,000.

In 1847, the legislature passed an act creating a new company, styled the "Louisville and Frankfort Railroad company" authorized, by the 38th section of the act, to construct a railroad from St. Clair street in Frankfort to some point on the Ohio river. This company succeeded to, and became invested with all the rights of way, and other privileges and franchises belonging to the late Lexington and Ohio

Railroad company. (9 *B. Mon.* 470.)   And it appears from the exhibits made part of the record, that under an agreement made by the company with the board of councilmen of the city of Frankfort, the former made certain improvements on Broadway street, between Washington and Wilkinson streets, in front of the lot of the plaintiffs, which were rendered necessary by the construction of the railroad, and for which the company paid, at various times, various sums, amounting in all to $7,263 82.

In March 1853, the appellees brought an action against the appellants, alledging in their petition that they were the owners of a lot of ground on Broadway street in Frankfort, on which a dwelling house and other improvements had been built and made for more than twenty years; that the appellants had caused to be constructed along the centre of said street, in front of plaintiffs' lot, a wall or structure about twelve feet in width, and four feet high at the western end of the lot: that the erection of the wall had greatly injured their lot and buildings and impaired their value; that it had deprived them of the use of a great portion of the street, and greatly interfered with the use and enjoyment of the remainder; that the wall had entirely obstructed the crossing of said street in front of their lot, and hindered the plaintiffs in the lawful use of the same, and therefore pray judgment for two thousand dollars in damages.

The defendants demurred to the petition upon various grounds, and the demurrer was overruled as to all except the 6th assignment, which set forth a defect of parties. The petition was amended by the proper parties being made; and the defendants then answered, denying the right of the plaintiffs' to maintain their action, asserting their authority and right to construct their railroad through Broadway street, and to make such walls as were necessary, under various acts of the legislature, and ordinances of the trustees and board of councilmen of Frankfort.

They deny that any injury or damage has resulted to the plaintiffs or others, from the construction of the railroad or wall, or that the plaintiffs have to any injurious extent, been deprived of the use of their lot and buildings.

The case was submitted to a jury who found a verdict in favor of the plaintiff for $240. Upon the motion of the defendants for a new trial, the verdict and judgment were set aside, and a new trial granted at the November term 1854. Afterwards, in November 1855, the plaintiffs brought another action for the recovery of such damages as had accrued since the institution of their first suit, and by agreement, the two causes were consolidated, and were submitted to the court for judgment upon the facts agreed by the parties.

The agreed facts are substantially as follows:

That the plaintiffs were the owners of the lot described in the petition, one year prior to the institution of their action, holding the same under Mrs. Hannah Price, who, before she completed her purchase of the lot, had notice that the trustees of Frankfort had granted the right of way for the building of a railroad along Broadway street; that this street is ninety feet wide, and the side-walks on either side are about ten feet wide; that the wall erected by the railroad company on which the rails are laid, occupies about twelve feet of the center of the street, and renders the crossing of the same by vehicles and horses, in front of said lot, impracticable; that the wall is not of greater height than was necessary for the construction of the railroad along the street, so as to cross the river; that the street has been, ever since the erection of the wall, well graded on either side, and that vehicles can pass and repass on either side without inconvenience.

The court rendered judgment for the plaintiffs, in the action first brought, for $125, and in the other, for $101, to reverse which the defendants prosecute this appeal.

The appellees insist that the structure complained of is a nuisance, and an encroachment upon their right to the free and unobstructed use and enjoyment of that portion of the street which lies in front of their property, for all lawful purposes; and the authority mainly relied on to sustain the judgments in their favor, and the principle upon which it seems to have been founded, is the case of the *Lexington and Ohio Railroad vs. Applegate, &c.,* 8 *Dana,* 289.

In that case the chancellor had enjoined the company from running their cars and carriages by steam or otherwise upon their railroad along Main street in the city of Louisville, upon the ground that the railroad and the running of cars upon it, was a purpresture and a nuisance of which the owners of property fronting on that street had a right to complain, and the propriety of that decree was the only question decided by this court. The right of the owners of lots contiguous to this street, was held to be a "private right, of the nature of an incorporeal hereditament, legally attached to their contiguous ground, an incidental title to certain facilities and franchises assured to them by contract and by law, without which their property would be comparatively of but little value, and would never have been bought by them." But it was also held that the appropriation of a portion of the street to the uses of the railroad, was not inconsistent with this right, but was consistent with the purposes for which the street was established, and with the just rights of all, and that therefore, such persons had no right, either to damages, or to an injunction; because they purchased their property and must hold it, subject to any consequences that may result, whether advantageously or disadvantageously, from any public and authorized use of the streets, in any mode promotive of and consistent with the purposes of establishing them as common highways in town. And the decree of the chancellor was, therefore, reversed, and the railroad, as con-

structed being authorized by the municipal power, declared to be neither a purpresture or nuisance.

But the appellees insist that the distinction between that case, and the one under consideration is, that in the former, the grade of the street was not altered, or so elevated as to obstruct the passage of the public over, or across any portion of it.

In the case of *Keasy vs. City of Louisville*, 4 *Dana*, 154, this court decided that the city authorities had a right to regrade a street for any public purpose, and that the city was not responsible for the inconvenience or obstructions to which the plaintiff was thereby subjected, although his house had been built to suit the original grade, and although the regrading complained of, had raised the street several feet above the level of his lot. And it was decided that the plaintiff had no cause of action, as the city had been guilty of no trespass, or invasion of any right of property. The same principle is decided in the case of *Wolfe vs. Cov. and Lex. Railroad*, 15 *B. Mon.*, 409, in which it is said that the city authorities of Covington had power "not only to authorize the introduction of the road into the city, and the use of the street for its purposes, but also to authorize the company to change the grade so as to suit the passage of this road," &c.; and might also change the grade for the purpose of making it correspond with the grade of the railroad, if the road had stopped at the end of the street, and so far above or below it as to prevent convenient access.

The case of *Chapman vs. The Albany and Schenectady Railroad Company*, 10 *Barbour*, 360, is conclusive of the question we have been considering. In that case the supreme court of New York decide: "That a railroad corporation, constructing its road through one of the streets of a city, in pursuance of authority granted by the legislature, and with the consent of the common council of the city, is not liable for consequential damages sustained by persons owning lands adjacent to the street, by reason of the

raisings of the grade of the street, provided the authority given to the company is exercised with proper skill and care.

"That the use to which a street in a city is devoted, is far more extensive than the mere right of the public to pass over it. It may be used in any way which shall best promote the interests or business of the city or village where it is located. What will so promote this business and that interest is to be determined by the municipal authority to whom the control of the streets is committed.

"That those who purchase lands adjacent to such streets, must be deemed to take their title, subject to the appropriation of streets to such purposes and objects as the public interests shall require.

"That the only restriction upon this appropriation is, that the use to be made of the streets must not be incompatible with the ends for which they were established." The learned judge who delivered this opinion, refers to, and quotes from, the case of the *Lexington and Ohio Railroad Company vs Applegate*, in support of the principles stated.

It is deemed unnecessary to notice further the numerous decisions referred to in argument on both sides. The current of authority upon this point, swelling with the accessions to which the introduction of the railroad system, upon an extended scale, has given rise in the courts of almost all the states, is unbroken. It may be assumed as true, that some portion of every railroad in the Union, runs through the street of a city, town or village, and in all the litigation which has resulted, we have met with no case recognizing a different doctrine, except where the general principle has been modified by some statutory enactment. Reason and justice, no less than judicial authority, sanction the principle. No right of property is invaded; no property of the appellees has been taken for public use, without compensation. Their right to the use of the street, even according to the most comprehensive definition of

Lou. & Frank. R. R. Co. *vs.* Brown, &c.

1. Purchasers of lots in cities and towns take them subject to the discreet exercise by the town authorities of all the power which the law gives them over the streets and alleys.

that right, is held and must be exercised in subjection to the equally well established right of the municipal power of the town or city, to make such appropriation of the streets as, in their opinion, will best promote the interests and business of the local community. "Streets within the limits of municipal corporations," in the language of the supreme court of New York—"are not exclusively to be devoted to the use of foot passengers and vehicles moved by animal power. This is undoubtedly their primary and principal, but by no means their only use. Sewers and drains may be constructed, water-pipes and gas-pipes may be laid in them; they may be dug up; their grade may be changed: and the adjacent owners subjected to various and serious inconveniences. If it was ever the rule, that streets could only be appropriated to the use of those who may have occasion to travel over them, either on foot, or by means of animal power, it is very certain that the progress of improvements, and the exigencies of society, have left such a rule far behind."

It is not pretended in this case, either that the municipal authorities of Frankfort were not invested, by the legislature, with full power to authorize the construction of this railroad through Broadway, or that there was any excessive or injudicious exercise of such power. It is admitted that the wall or structure complained of, is not of a greater width or height, than was necessary for the construction of the railroad along the street so as to cross the river; that the street has been, ever since the erection of the wall, well graded on either side and that vehicles can pass and repass, on either side without inconvenience.

2. The municipal authorities of the city of Frankfort had full power to admit the Louisville and Lexington Railroad to pass through Broadway street and to permit such grading as was proper to secure the passage of the cars thro' that street, and no right of action for any partial injury to the owners of property on said trial accrued therefrom.

Our conclusion, therefore, is, that the appellees, upon the case as made out by the pleadings and proof exhibited in the record, were not entitled to any judgment.

Wherefore, the judgment is reversed, and the cause remanded for a new trial, and for further proceedings in conformity with this opinion.